JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona  85007
Telephone: 602-382-2700

SUSAN E. ANDERSON, #020343
Asst. Federal Public Defender
Attorney for Defendant
susan_anderson@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>  vs.<br><br>Abdullatif Ali Aldosary,<br><br>    Defendant | No. CR-12-2042-PHX-SRB<br><br>**DEFENDANT'S OBJECTIONS TO DRAFT PRESENTENCE REPORT** |

   The defendant, Abdullatif Ali Aldosary, by and through undersigned counsel, hereby submits his objections to the draft presentence report (PSR).

   **1. Objection to imposition of sentence on more than a single firearms count, on grounds that counts 2-4 of the Superseding Indictment are multiplicitous and that imposing sentences on all three counts would violate the Double Jeopardy Clause:**

   The PSR recommends imposing the maximum ten year sentence on all three felon-in-possession counts for which the defendant was found guilty after trial, to be served consecutively, for a total sentence of 30 years in prison. (PSR at pp. 1, 16-18.)  The defendant objects to the imposition of sentence on all three counts, as a threshold matter, as the counts are multiplicitous.  In other words, counts 2-4 of the Superseding Indictment constitute a single violation of

18 U.S.C. § 922(g), and imposing more than one punishment for this single violation would violate the Double Jeopardy Clause of the United States Constitution.

The defendant has raised this objection in a separately filed motion to dismiss counts, (Doc. 85), and he hereby incorporates by reference, in its entirety, the memorandum of points and authorities accompanying that motion. In summary, the argument is as follows:

It is well established that a defendant may not be convicted of multiple counts of felon-in-possession of a firearm based on that defendant's possession of multiple firearms on the same date, absent a finding of fact by a jury that the defendant acquired the firearms on different occasions or stored the firearms in different locations. *See United States v. Ankeny*, 502 F.3d 829, 838 (9th Cir. 2007); *United States v. Szalkiewicz*, 944 F.2d 653, 653-54 (9th Cir. 1991) (per curiam). Nor may a defendant be convicted of more than one count for being a felon-in-possession of a firearm and ammunition simultaneously. *See United States v. Keen*, 104 F.3d 1111, 1118-20 (9th Cir. 1996). Possession of multiple firearms on the same date may lead to separate punishments only where an allegation that the firearms were stored or acquired at different times or places was put before the jury and reflected in its verdict. *See Szalkiewicz*, 944 F.2d at 654; *United States v. Wiga*, 662 F.2d 1325, 1336-37 (9th Cir. 1981). The strength of the evidence at trial as to separate acquisition or storage is of no consequence if the issue is not actually presented to and found by the jury. *Szalkiewicz*, 944 F.2d at 654. "In other words, where there is more than one charge under section 922(g), separate acquisition and storage of the weapons is an element of the crimes charged," *United States v. Cunningham*, 145 F.3d 1385, 1398 (D.C. Cir.

1998), and "'[i]t is therefore axiomatic that the defendant has a right to a jury finding on this essential issue.'" *Szalkiewicz*, 944 F.2d at 654 (quoting *United States v. Valentine*, 706 F.2d 282, 294 (10th Cir. 1983)).

In the instant case, it is clear that multiple convictions and sentences for counts 2-4 of the Superseding Indictment cannot stand.  Each count charges the defendant with being a convicted felon in possession of either a firearm or ammunition on or about November 30, 2012 in the District of Arizona.   No attempt was made in the indictment to distinguish the three counts as involving firearms or ammunition acquired on different dates or stored at different sites. While there was evidence presented at trial (and disputed at trial) regarding the separate acquisition of the two firearms and some of the ammunition, the jury was not asked to make any factual findings in this regard.   In the absence of such special factual findings, and in light of the plain language of counts 2-4 of the Superseding Indictment alleging simultaneous possession on November 30, 2012 of the firearms and the ammunition, no more than a single violation of 18 U.S.C. § 922(g) has been shown.  Consistent with the case law outlined above and discussed in the defendant's separate motion to dismiss, this Court may only impose a single conviction and sentence on the defendant.   Two of the three counts must be dismissed as multiplicitous.

If the motion to dismiss counts (and this objection) is granted, then the defendant is facing sentencing on a single count, with a maximum sentence of ten years rather than the 30-year maximum currently reflected in the PSR.

**2.     Objections to description of offense conduct in paragraphs 6-11:**

The defendant disputes the allegations in these paragraphs and denies the alleged crimes attributed to him there.  He pled not guilty to the original and superseding indictments in this case, maintained his not guilty plea through trial, and is expected to plead not guilty to the bombing-related charges and murder charges that are pending against him in Pinal County.  Certain crimes are attributed to him in the narrative in these paragraphs as if the allegations are undisputed facts, which is simply not the case.  It is not in the defendant's interest to engage in a detailed refutation of the allegations in these paragraphs, in light of the charges pending against him in Pinal County, but this should not be taken as a concession of the facts alleged in these paragraphs.

The defendant does note, nevertheless, a particular objection to the conclusory allegation in paragraph 11 that "forensic evidence revealed" that he used the Ruger handgun to commit a murder.  This overstates the accuracy, the reliability, and the reach of the forensic evidence.  The conclusion that the defendant committed the murder is speculative.  The single conclusory sentence regarding this alleged crime as contained in paragraph 11 is certainly insufficient to hold the defendant accountable for a cross-reference to the first-degree murder guideline.

**3.     Objection to the application of a cross-reference to first-degree murder in paragraph 17:**

The defendant objects to the application of a cross-reference to first-degree murder.

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### a. The burden of proof for applying the cross-reference should be by clear and convincing evidence.

As a threshold matter, because the application of the cross-reference increases the defendant's offense level from either 20 or 24 all the way up to 43, a clear-and-convincing evidence standard should be applied.  The Ninth Circuit has held that due process requires this higher standard of proof when a sentencing factor, including an enhancement based upon uncharged conduct, creates "an extremely disproportionate impact" on the sentence.  *See United States v. Jordan*, 256 F.3d 922, 927-29 (9th Cir. 2001); *United States v. Valensia*, 222 F.3d 1173, 1182 (9th Cir. 2000).  Factors to be considered in determining whether the higher standard of proof should apply include: (1) whether "the enhanced sentence fall[s] within the maximum sentence for the crime alleged in the indictment;" (2) whether "the enhanced sentence negate[s] the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment;" (3) whether "the facts offered in support of the enhancement create new offenses requiring separate punishment;" (4) whether "the increase in sentence [is] based on the extent of a conspiracy;" (5) whether "the increase in the number of offense levels is less than or equal to four;" and (6) whether "the length of the enhanced sentence [is] more than double the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence." *Valensia*, 222 F.3d at 1182.  Here, factors 3, 5, and 6, at a minimum, support application of the higher standard of proof.  Indeed, it is difficult to imagine a case with a more dramatic increase in the number of offense levels than in the instant case, where application of the cross-reference raises the offense level by 19-23 levels.  Depending on the maximum

5

statutory sentence that applies -- ten or thirty years -- the substantive increase in the recommended guideline sentence ranges from an additional 4-7 years up to an additional 24-27 years.

### b. The cross-reference is not supported by clear and convincing evidence.

The cross-reference should not be applied in this case because it is not supported by clear-and-convincing evidence. The only information the Court has been provided in support of the cross-reference to first-degree murder is a conclusory line or two in the PSR stating that "forensic evidence revealed" that the defendant used the Ruger handgun "to murder a former co-worker on November 27, 2012, in Maricopa, Arizona," (PSR at ¶ 11), and that Pinal County has indicted the defendant for first degree murder, (PSR at ¶ 17). Other than the fact of the indictment in Pinal County, which is not evidence, the defendant disputes these bare allegations. In particular, the defendant disputes the accuracy, reliability, and import of the referenced "forensic evidence." Notably, no facts at all are provided to support the application of the first-degree murder guideline as opposed to a lesser homicide or manslaughter guideline.

Pursuant to USSG § 6A1.3, "[i]n resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, *provided that the information has sufficient indicia of reliability to support its probable accuracy*." (Emphasis added.) The PSR is not evidence, and when it contains such conclusory and bare bones allegations as those here regarding the murder, the defendant should not bear the burden of coming forth with evidence demonstrating that the allegations are untrue,

inaccurate, or unreliable.  Before any such burden is placed on the defendant, the Government should be required to come forth with reliable evidence sufficient to convince the Court by clear and convincing evidence that the defendant committed first-degree murder as alleged.  Absent such a showing by the Government, the cross-reference should not be applied.

### c. Applying the cross-reference here is fundamentally unfair and violates due process.

Even if the Government were to come forward with sufficient evidence regarding the murder, the Court should still reject application of the cross-reference as fundamentally unfair and violative of due process under the circumstances here.  Charges of first-degree murder are currently pending against the defendant in Pinal County, and the case could potentially go capital.  The defendant enjoys a presumption of innocence with respect to those charges, as well as a right to remain silent, a right to effective assistance of counsel, and a right to a jury trial and to be found guilty only upon proof beyond a reasonable doubt.  Entertaining the cross-reference here (1) effectively forces the defendant to speak up and defend himself here in federal court against the state murder charges, before he has even been arraigned in state court, and (2) interferes with and infringes upon all of the rights he has with respect to the state charges.  The defendant faces a Catch-22, where to avoid a draconian sentencing enhancement here in federal court he must launch a factual defense to the pending state charges and risk compromising his later defense in state court.  Launching a factual defense here to the cross-reference would mean prematurely exposing the strengths and weaknesses of his defense, compromising his potential defense at trial and his negotiating position with respect to the state charges.  Furthermore,

the defendant is at an unfair disadvantage in launching a factual defense to the cross-reference because he has not been provided full disclosure of the evidence against him.  The discovery he has been provided by the Assistant United States Attorney regarding the murder has been limited, and understandably so, given that the murder is not the subject of charges in federal court and was never even mentioned in the trial on the felon-in-possession counts.

Under the above circumstances, it is not only unfair to place the defendant in the position of having to defend against this cross-reference, it is unnecessary.  Application of the cross-reference would substantially increase the defendant's sentence, purportedly to serve the goals of adequate punishment, deterrence, and protection of the public.  A longer sentence is purportedly required to accomplish these goals where a defendant uses a firearm as opposed to merely possesses a firearm.  However, there is no need to impose such an increased term of incarceration here in this case, to serve these goals, since the defendant already faces prosecution in state court for these same murder charges. If the allegations are proven in state court, the state court will impose the appropriate consequences upon the defendant.  There is no need for the federal court to fill that gap, as it might arguably need to do in a different case where there is no likelihood of a state prosecution.

Principles of due process and fundamental fairness militate against application of the cross-reference in the unique circumstances of the instant case, where the murder charges are pending in state court and discovery relating to the murder has been limited here in federal court.

### d. This Court should decline to apply the cross-reference on policy grounds.

Even if the Court determines that, strictly speaking, due process permits the application of the cross reference, the Court should nevertheless decline to impose the cross-reference for the practical and policy reasons cited above, consistent with *Booker* and *Kimbrough* and the advisory nature of the guidelines.  There is a valid perception that it perverts our system of justice to permit the government to charge a firearms offense, prove the firearms offense beyond a reasonable doubt to a jury that is told nothing of a murder occurring at a separate time and place, and then achieve punishment for the uncharged murder at the sentencing of the firearms offense by proving the murder to a judge by a lesser standard.  While other courts have rejected due process, jury trial, and federalism challenges to the application of the § 2K2.1(c) cross-reference[1], the perception of unfairness persists, and it is magnified in the unique circumstances of the instant case.

The First Circuit in *Lombard* remanded a case for resentencing and consideration of a downward departure to avoid unfairness where a cross-reference to the murder guideline had "upstaged [the defendant's] conviction for firearms possession" and had become the "the tail [that] wagged the dog."  *United States v. Lombard*, 72 F.3d 170, 177 (1st Cir. 1995).  The court explained that the process of "enhancing" the defendant's firearm sentence to life imprisonment by

---

[1] *See, e.g., United States v. Carroll*, 3 F.3d 98, 101-102 (4th Cir. 1993) (rejecting challenge that cross-reference impermissibly federalized a state crime); *United States v. Smith*, 997 F.2d 396, 397 (8th Cir. 1993)(holding that applying cross-reference for uncharged conduct does not violate right to due process or jury trial).

application of a cross-reference to murder "raise[d] grave constitutional concerns." *Id.* It noted, first, the anomoly of applying a life sentence "not for conduct charged and convicted but for other conduct as to which there was, at sentencing, at best a shadow of the usual procedural protections, such as the requirement of proof beyond a reasonable doubt." *Id.* It noted how this anomaly of lesser procedural protections for the plainly more serious conduct was heightened by the operation of the firearms cross-reference provision, which, rather than incrementally ratcheting up a base offense level like other enhancements, instead required the trial court to calculate the defendant's offense level "*as if* his offense of conviction had been murder." *Id.* The court explained how the convergence of these and other circumstances in the case, including the fact that the defendant had been acquitted of the murder in state court, raised the serious question of whether constitutional limits on the use of sentencing factors had been exceeded. *See id.* at 178-83.

Many of the concerns raised in *Lombard* are present here, and particularly so if the defendant faces three consecutive ten-year sentences. This Court has the power after *Booker* and *Kimbrough* to hold a policy disagreement with the murder cross-reference under § 2K2.1(c) and refuse to impose it. We urge the Court to invoke that power here and reject the cross-reference to murder as unfair as a general matter or at least as applied here.

\* \* \*

If this objection is granted, the defendant's base offense level would be 20. If the murder cross-reference under § 2K2.1(c) is not applied because of a failure of proof, then presumably the +4 enhancement for other criminal conduct under § 2K2.1(b)(6) would not apply either. In that case, the applicable guideline

range would be 37-46 months (offense level 20 and criminal history category II). If the cross-reference were not applied for other reasons, such as policy reasons, it is possible that the +4 enhancement under § 2K2.1(b)(6) would apply, and the applicable guideline range would be 57-71 months (offense level 24 and criminal history category II).

**4.   Objection to paragraph 27:**

While the defendant does not dispute that he was convicted for the offenses described in paragraph 27 or that the narrative may accurately summarize relevant police reports, he notes for the record that he does not agree that the police reports accurately summarize the events that occurred involving he and his former employer.

The defendant specifically disputes the allegation that he failed to report to the parole office within 24 hours of his release from ADOC.  He went to the parole office as directed but found that his parole officer was out for the holiday.  He left telephone and written messages for his parole officer, who then conducted a home visit after the holiday and acknowledged receiving the defendant's messages.

**5.   Objection to paragraph 30:**

The defendant notes for the record that he does not agree that the narrative accompanying paragraph 30 accurately summarizes the events that occurred involving he and his former employer.

6.      **Objections to paragraphs 33-34:**

The defendant denies the charges set forth in paragraphs 33 and 34 and anticipates entering pleas of not guilty when he is arraigned in Pinal County on these pending charges.  As noted in his objection number 2, above, regarding the description of offense conduct in paragraphs 6-11, certain crimes are similarly attributed to him in the narrative in paragraphs 33-34 as if the allegations are undisputed facts, which is not the case.  It is not in the defendant's interest to engage in a detailed refutation of the charges in paragraphs 33-34, which are pending against him in Pinal County, but this should not be taken as a concession of the facts alleged in these paragraphs.

The defendant does note, nevertheless, a particular objection to the accuracy of the statement in paragraph 33 that his "fingerprints and DNA were on the handgun, and on the shell casings found at the murder scene."  At trial on the firearms count, the evidence showed that the defendant's DNA was found on the handgun, although the defense disputed whether this was as a result of primary versus secondary transfer (i.e., contamination).  The evidence did *not* show that his fingerprints were on the handgun.  Indeed, a stipulation was read to the jury acknowledging that no useable fingerprints were found on the handgun.  This statement in paragraph 33 regarding fingerprints on the gun is thus plainly incorrect.  The defendant also challenges the accuracy of the statement that his fingerprints and DNA were on shell casings found at the murder scene.  The defense has never been provided with any discovery or test results or other information that suggests such evidence was found.

**7.      Objections to recommended fine, ¶ 58 and p. 16:**

The defendant objects to the recommended fine of $20,000 as grossly excessive.   First, if the cross-reference is not imposed, then the defendant's offense level will be substantially lower, and the guideline range for the fine will also be substantially lower.  This would call for a substantially lower fine.   Second, and in any event, the defendant's personal finances and the circumstances he finds himself in with serious charges in Pinal County do not suggest that he has the ability to pay more than a minimal fine, at most.

Respectfully submitted:  January 6, 2014.

JON M. SANDS
Federal Public Defender

 s/Susan E. Anderson
SUSAN E. ANDERSON
Asst. Federal Public Defender

Copy of the foregoing transmitted
by ECF for filing January 6, 2014, to:

CLERK'S OFFICE
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

DAVID PIMSNER
Assistant U.S. Attorney

Copy mailed to:

CHRIS WOODIEL
United States Probation Officer

13

ABDULLATIF ALI ALDOSARY
Defendant
  _s/yc_